NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

SEP 2 2020

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

JOANNE FARRELL; et al.,

Plaintiffs-Appellees,

ESTAFANIA OSORIO SANCHEZ,

Objector-Appellant,

v.

BANK OF AMERICA CORPORATION,
N.A.,

Defendant-Appellee.

No.    18-56272

D.C. No.
3:16-cv-00492-L-WVG

MEMORANDUM*

JOANNE FARRELL; et al.,

Plaintiffs-Appellees,

AMY COLLINS,

Objector-Appellant,

v.

BANK OF AMERICA CORPORATION,
N.A.,

Defendant-Appellee.

No.    18-56273

D.C. No.
3:16-cv-00492-L-WVG

      *      This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

| | |
|---|---|
| JOANNE FARRELL; et al., | No.  18-56371 |
| Plaintiffs-Appellees, | D.C. No.<br>3:16-cv-00492-L-WVG |
| v. | |
| RACHEL THREATT, | |
| Objector-Appellant, | |
| v. | |
| BANK OF AMERICA, N.A., | |
| Defendant-Appellee. | |

Appeal from the United States District Court
for the Southern District of California
M. James Lorenz, District Judge, Presiding

Argued and Submitted March 2, 2020
Pasadena, California

Before:  KLEINFELD and CALLAHAN, Circuit Judges, and CHRISTENSEN,[**]
District Judge.
Dissent by Judge KLEINFELD

Objectors-Appellants appeal from the district court's: (1) approval of a class

action settlement between Defendant-Appellee Bank of America and Plaintiffs-

Appellees, Bank of America accountholders; and (2) $14.5 million fee award to

---

[**]      The Honorable Dana L. Christensen, United States District Judge for
the District of Montana, sitting by designation.

class counsel. We review for abuse of discretion. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 940 (9th Cir. 2011). We affirm both the settlement approval and the fee award.

The district court did not err in approving the settlement over objections to the failure to create subclasses. The named plaintiffs "fairly and adequately protect[ed] the interests of the class." Fed. R. Civ. P. 23(a)(4). No conflict of interest arose when the differences between members of class did not bear on "the allocation of limited settlement funds" and when the structure of the settlement appropriately protected "higher-value claims . . . from class members with much weaker ones." *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, 895 F.3d 597, 605 (9th Cir. 2018).

Nor did the district court abuse its discretion in using the percentage-of-recovery method to calculate fees and refusing to conduct a lodestar crosscheck. This Court has consistently refused to adopt a crosscheck requirement, and we do so once more. *See Campbell v. Facebook*, 951 F.3d 1106, 1126 (9th Cir. 2020); *In re Hyundai & Fuel Econ. Litig.*, 926 F.3d 539, 571 (9th Cir. 2019) (en banc); *Bluetooth*, 654 F.3d at 944; *Stanger v. China Elec. Motor, Inc.*, 812 F.3d 734, 738–39 (9th Cir. 2016); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011); *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th

Cir. 1990). The district court acted within its "discretion to choose how [to] calculate[] fees." *Bluetooth*, 654 F.3d at 944.

The district court considered the most pertinent factors influencing reasonableness, and it did not err in finding the fee award reasonable under Federal Rule of Civil Procedure 23(h). *See Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954–55 (9th Cir. 2015). The court appropriately considered: (1) "the extent to which counsel 'achieved exceptional results for the class'"; (2) "whether the case was risky for class counsel"; (3) "whether counsel's performance 'generated benefits beyond the cash settlement fund'"; and (4) "the burdens class counsel experienced while litigating the case (e.g., cost, duration, foregoing other work)." *Id.* (quoting *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048–50 (9th Cir. 2002)).

Most significantly, the district court concluded that class counsel demonstrated "tenacity and great skill," achieving a "remarkable" result in a "hard fought battle" despite an "adverse legal landscape" and the "substantial risk of non-payment." Indeed, excepting the district court in this particular matter, no court has ever ruled for bank accountholders on the controlling legal issue. *Compare Farrell v. Bank of Am., N.A.*, 224 F. Supp. 3d 1016 (S.D. Cal. 2016) *with Fawcett v. Citizens Bank, N.A.*, 919 F.3d 133 (1st Cir. 2019); *Walker v. BOKF, N.A.*, No. 1:18-cv-810-JCH-JHR, 2019 WL 3082496 (D.N.M. July 15, 2019); *Johnson v. BOKF, Nat'l Ass'n*, 341 F. Supp 675 (N.D. Tex. 2018); *Moore v. MB Fin. Bank,*

*N.A.*, 280 F. Supp. 3d 1069 (N.D. Ill. 2017); *Dorsey v. T.D. Bank, N.A.*, No. 6:17-cv-01432, 2018 WL 1101360 (D.S.C. Feb. 28, 2018); *McGee v. Bank of Am., N.A.*, No. 15-60480-CIV-COHN/SELTZER, 2015 WL 4594582 (S.D. Fla. July 30, 2015), *aff'd* 674 F. App'x 958 (11th Cir. 2017); *Shaw v. BOKF, Nat'l Ass'n*, No. 15-CV-0173-CVE-FHM, 2015 WL 6142903 (N.D. Okla. Oct. 19, 2015); *In re TD Bank, N.A. Debit Card Overdraft Fee Litig.*, 150 F. Supp. 3d 593, 641–42 (D.S.C. 2015). This was a "risky" case, and the result negotiated for the class was "exceptional." *Online DVD-Rental*, 779 F.3d at 954–55.

We agree with the dissent that the individual cash distributions were small, but we take a different view of the value of the injunctive relief. While it can be difficult to value nonmonetary relief, we have no trouble finding that the value here exceeds the $29.1 million assigned to it by the parties. Even more valuable than the debt forgiveness is Defendant-Appellee's agreement to refrain from assessing the fees challenged in this lawsuit—over the five-year moratorium imposed under the settlement agreement, Defendant-Appellee will forgo assessing $1.2 billion in fees. We do not struggle to conclude, as the district court did, that counsel "generated benefits" far "beyond the cash settlement fund." *Id.* at 955.

Applying the abuse of discretion standard, as we must, we find that the district court reasonably determined that the relevant factors justified a fee award equivalent to 21.1% of the common fund. It was reasonable "not to perform a

crosscheck of the lodestar in this case, given the difficulty of measuring the value of the injunctive relief." *Campbell*, 951 F.3d at 1126. What is more, the award fell under the 25% benchmark that we have encouraged district courts to use as a yardstick. *Stanger*, 812 F.3d at 738; *Online DVD-Rental*, 779 F.3d at 955. Even if we were inclined to question the district court's motive in approving the settlement and awarding fees, we note that the district court's prior order denying Defendant-Appellee's motion to dismiss is inconsistent with the dissent's suggestion that the district court streamlined its docket at the expense of faithful adherence to the law.

In short, neither the settlement nor the fee award raises an eyebrow. We have settled the issue of whether a lodestar crosscheck is required, and we would not unsettle our precedent, even if we had the authority to do so.

**AFFIRMED.**

*Farrell v. Bank of America Corp., N.A.*, No. 18-56272+

KLEINFELD, Senior Circuit Judge, dissenting:

I respectfully dissent.

The district court abused its discretion regarding attorneys' fees in two respects: by overvaluing the settlement in applying the percentage method, and by failing to weigh the percentage method against the lodestar method. The consequence is an unreasonable attorneys' fee award. "Because the relationship between class counsel and class members turns adversarial at the fee-setting stage, district courts assume a fiduciary role that requires close scrutiny of class counsel's requests for fees and expenses from the common fund."[1]

Bank of America charged customers in the class $35 for each instance of writing a check against insufficient funds, and—in the event that Bank of America advanced the customer funds to honor the check—charged another $35 if the

---

[1] *In re Optical Disk Drive Prods. Antitrust Litig.*, 959 F.3d 922, 930 (9th Cir. 2020).

1

customer did not pay back the advance within five days. The second $35 fee, referred to as an "Extended Overdrawn Balance Charge" or an "EOBC," is all that the settlement in this case addressed. The initial overdraft fee was unchallenged. Plaintiffs' counsel claimed that the EOBC constituted usurious interest under the National Bank Act.[2] The district court, though acknowledging that every other court to rule on the question had decided that it was not, nevertheless ruled that the EOBC did indeed constitute usurious interest under the National Banking Act. Bank of America appealed, but before any appellate decision came down, the parties settled.

As part of their settlement, plaintiffs' lawyers and Bank of America agreed to class certification if the court approved the settlement. No class had yet been certified. The class would consist of around seven million people who, between February 25, 2014, and December 30, 2017, had been assessed at least one EOBC that had not been refunded. Bank of America agreed to a "clear sailing" attorneys' fees provision, that is, that it would not oppose any application for attorneys' fees not exceeding 25% of the settlement value plus costs and expenses. Bank of

---

[2] 12 U.S.C. §§ 85–86.

America agreed to pay $37.5 million in cash into a settlement fund, to forgive uncollected EOBCs on its books in the amount of at least $29.1 million, and to quit assessing EOBCs for five years beginning December 31, 2017, after which point it could resume the EOBCs as before. Class members who had actually paid the $35 EOBC would not get their $35 back. They would get only the $37.5 million—less attorneys' fees, costs, named plaintiff additional awards, and settlement administrator hourly charges—divided by the number of class members who had been assessed at least one EOBC which had not been refunded or charged off, and issued pro rata based on how many EOBCs each of those class members paid. At oral argument, objectors' counsel represented that this distribution worked out to be $1.07 per EOBC for qualifying class members paid. Each of these class members would thus get a little over a dollar back for each purportedly usurious $35 charge that they had paid. For class members who closed their accounts with an outstanding balance due to one or more unpaid EOBCs, Bank of America would reduce class members' indebtedness, but only by $35. This held true even if the debt exceeded that amount, as when Bank of America had assessed multiple $35 EOBCs.

For this result, the district court awarded attorneys' fees of $14.5 million. The district court's rationale for granting this attorneys' fee award was that it was 21.1% of the cash payments plus the reduction in the amount of uncollected debt. The district court did not make a lodestar calculation and did not cross check the $14.5 million against a lodestar calculation, even though class counsel submitted they had put only 2,158 hours into the case, about what a new associate at a major firm bills in a year. The $14.5 million fee amounted to a rate of over $6,700 per hour, as compared with the $250–$800 rate class counsel submitted as its rate for attorneys.

We held in *Roes v. SFBSC Management*,[3] following earlier decisions, that where a settlement is negotiated before a class has been certified, "settlement approval 'requires a higher standard of fairness' and 'a more probing inquiry,'" looking for "'subtle signs' of collusion" such as a disproportionate distribution to counsel and a clear sailing agreement for attorneys' fees,[4] both of which we have in

---

[3] 944 F.3d 1035 (9th Cir. 2019).

[4] *Id.* at 1048–49 (quoting *Allen v. Bedolla*, 787 F.3d 1218, 1224 (9th Cir. 2015); *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012)).

4

the case before us. The district court abused its discretion by not applying this "more 'exacting review.'"[5]

In their settlement, plaintiffs' counsel and the Bank agreed that the "debt reduction"—that is, the amount of uncollected EOBCs that the Bank agreed not to collect—amounted to $29.1 million. The objectors argued that the $29.1 million in purported debt forgiveness was greatly exaggerated or illusory. There was no evidence that the Bank was suing anyone for or actively attempting to collect these putative debts, and the objectors pointed out that the bank was highly unlikely to try to collect the $35 "debts." Indeed, the whole benefit of a class action is that it is not worth it to most entities to sue for such small amounts, so it makes no sense to suppose that even though the Bank's account holders need a class action to make collection economically practical, the Bank does not. As the objectors suggest, the Bank's filing and service fees alone would likely exceed the amounts of the debts in each instance of attempted collection.

---

[5] *Id.* at 1049 (quoting *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012)).

5

The district court suggested that account holders, even if they were never going to pay the $35, might benefit from improvement in their credit scores. But this was never quantified. And because the settlement limits debt forgiveness to only one $35 reduction per class member even if more than one such fee was charged, the benefit of the purported credit score improvement is especially dubious or at least highly speculative. It is worth, if anything, nowhere near $29.1 million.

The district court also suggested that even though the Bank might never attempt to collect what it had not yet collected, it might sell the debt. But as the objectors argue, the sale value of this debt would more than likely be steeply discounted from its face value because of the impracticality of collecting it. It is hard to believe that the $29.1 million in "debt reduction" is anything more than a way to puff the value of the settlement by plaintiffs' counsel and the Bank, in order to get the attorneys' fees approved. A debt that is as a practical matter uncollectible, even if multiplied by a large number of purported debtors, has negligible or no value. It was an abuse of discretion to take this pile of worthless debt at face value for purposes of assessing attorneys' fees.

The other number the district court used to justify the attorneys' fee award was the estimated value of the Bank's agreement to an injunction requiring it to stop charging the EOBCs for a five-year period, to end in 2022. The district court attributed a value of $1.2 billion to this injunctive relief based on the claimed cost to the Bank of ceasing the practice. In dismissing an objection to giving the debt relief face value, it stated that even "assuming *arguendo* that [the value of the debt relief] was illusory, the Court finds that the staggering $1.2 billion dollars in injunctive relief is worth substantially more than $29.1 million to the denominator."

In *In re Bluetooth Headset Products Liability Litigation*, we noted the importance of comparing "the settlement's attorneys' fees award and the *benefit to the class* or degree of success in the litigation . . . ."[6] Here, no calculation was made of how many, if any, class members might benefit from this prospective relief, as opposed to non-class members. Any account holder against whom no EOBC had been charged during the class period was not in the defined class, but

---

[6] *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 943 (9th Cir. 2011) (emphasis added).

they would receive some of the benefit from this injunctive relief. This much of the benefit of the injunction is to persons not in the class, commensurately reducing any value to class members. For class members who no longer maintained accounts, the forward-looking injunction would have no value, since the Bank could not impose late-payment charges on people who no longer had accounts. The benefit to class members of the injunctive relief here is speculative, uncalculated, and likely to be a negligible fraction of the valuation the district court accepted.

We explained in *Staton v. Boeing Co.*[7] that "[p]recisely because the value of injunctive relief is difficult to quantify, its value is also easily manipulable by overreaching lawyers seeking to increase the value assigned to a common fund."[8] Therefore, we held, "only in the unusual instance where the value to individual class members of benefits deriving from injunctive relief can be accurately ascertained may courts include such relief as part of the value of a common fund

---

[7] *Staton v Boeing Co.*, 327 F3d 938 (9th Cir 2003).

[8] *Id.* at 974.

for purposes of applying the percentage method of determining fees."[9]  Similarly, we held in *Roes v. SFBSC* that "because of the danger that parties will overestimate the value of injunctive relief in order to inflate fees, courts must be particularly careful when ascribing value to injunctive relief for purposes of determining attorneys' fees, and avoid doing so altogether if the value of the injunctive relief is not easily measurable."[10]  Under *Staton*, the district court erred in valuing the benefit of the injunctive relief to the class at $1.2 billion based on its cost to Bank of America rather than its value to the class.  Because this valuation of $1.2 billion is in error, the district court committed legal error to the extent it determined that "the staggering $1.2 billion in injunctive relief" justified the $14.5 million attorneys' fee award.  Moreover, under *Staton* and *Roes*, the district court abused its discretion by attributing *any* value to the class of the injunctive relief, much less the face value claimed.

---

[9] *Id.*

[10] *Roes*, 944 F.3d at 1055.

Considering the value of the settlement to the class—$37.5 million in cash plus some indeterminate and uncalculated amount in debt reduction—the attorneys' fees of $14.5 million constituted perhaps slightly less (but probably not much less) than 39% percent of the putative common fund. Our controlling authority generally sets a 25% "benchmark" for attorneys' fees calculated using the percentage method.[11] Thus the award here, even without considering the lodestar, ought to be reversed as an abuse of discretion once the economic reality of the amount is considered.

The district court, and the panel majority, justify the fee in part by the "difficulty" of the case. There are different kinds of difficult cases. One is when there is great legal complexity, or a vast amount of discovery, or coordination of many parties, or extremely complex damages. Another kind of difficulty is when it is just a bad case, perhaps a negligence case where duty and breach of the duty of care are pretty clear, but there are plainly no damages. Suppose, for example, the driver with the right of way sues the driver who ran a stop sign and almost hit him but did not, for negligence. That case would be difficult because it is meritless and

---

[11] *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 570 (9th Cir. 2019) (en banc).

10

should not be brought at all.  It would earn a costs award against the plaintiff, not an award in favor of plaintiff's attorneys.  The district court explanation, accepted by the majority, of why this case was difficult, that all the other courts to consider the question had gone the other way, sounds more like the no-damages negligence case than the massive and complex but meritorious case.  This case involved no difficulty at all, in the sense of how much work was needed from counsel.  There was nothing to it but a legal question, whether the second fee could be considered usurious, all the established precedent said no, and plaintiff's attorney obtained a ruling from the district court, never tested on appeal, and contrary to all the established precedent.  To treat that sort of case as justifying an extraordinarily high fee because of "difficulty" would reward attorneys for bringing meritless cases.  Difficulty of that sort cannot justify a discretionary award of extraordinarily high attorney's fees.

The district court also erred by not considering a lodestar calculation.  Its only stated justification for avoiding this cross check was that controlling law did

not require cross checking against the lodestar; it did not claim that the lodestar cross check would be uninformative or unhelpful. In *Bluetooth*, we noted that the first of the twelve *Kerr* factors for evaluating the reasonableness of attorneys' fees is "the time and labor required,"[12] and we held that the district court's discretion in choosing its method of awarding attorneys' fees "must be exercised so as to achieve a reasonable result."[13] Interpreting reasonableness, we held that, "for example, where awarding 25% of a 'megafund' would yield windfall profits for class counsel in light of the hours spent on the case, courts should adjust the benchmark percentage or employ the lodestar method instead."[14] In *Bluetooth*, in part because the district court did not precisely calculate what the lodestar amount would be—despite stating that it was applying the lodestar method—we vacated and remanded.[15] We faulted the district court's exercise of discretion not only because of "the absence of explicit calculation or explanation of the district court's result," but also because "the district court declined to reduce the award because the injunctive relief and *cy pres* payment provided 'at least minimal benefit'" to the

[12] *Bluetooth*, 654 F.3d at 942 n.7 (quoting *Kerr v Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975)).

[13] *Bluetooth*, 654 F.3d at 942.

[14] *Id.*

[15] *Id.* at 943, 945.

class.[16]  In other words, because the injunctive relief and *cy pres* payment were not calculated, "[w]ith neither a lodestar figure nor a sense of what degree of success this settlement agreement achieved, we ha[d] no basis for affirming the fee award as unreasonable under the lodestar approach."[17]

While not requiring a cross check, *Bluetooth* notes that "we have also encouraged courts to guard against an unreasonable result by cross-checking their calculations against a second method."[18]  We have held that "[t]he 25% benchmark rate, although a starting point for analysis, may be inappropriate in some cases,"[19] and that it "must be supported by findings that take into account all of the circumstances of the case."[20]

---

[16] *Id.* at 943–44.

[17] *Id.* at 944.

[18] *Id.*

[19] *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002).

[20] *Id.*

13

Our cases holding that a cross check is not necessarily required do not open the door to mechanical application of a percentage award to putative common funds that include speculative and uncalculated value in the form of debt reduction. We noted in *Bluetooth* that "even though a district court has discretion to choose how it calculates fees, we have said many times that it 'abuses that "discretion when it uses a mechanical or formulaic approach that results in an unreasonable award."'"[21] The attorneys' fee award in this case does not satisfy *Bluetooth*.

Though circuit law does not necessarily require a cross check, it probably should. We said in *Bluetooth* and in *In re Optical Disk Drive Products Antitrust Litigation* that we have "encouraged" a cross check.[22] But at least in this case, the district court chose to follow the negative pregnant—that we do not r*equire* the cross check—rather than accept the encouragement. This is understandable. In the rare instance of a class action going to trial, the effect on the district court's docket—combined with the difficulty of trying criminal cases within the 18 U.S.C. § 3161 statutory deadline and the press of other civil litigation—is a devastating

---

[21] *Bluetooth*, 654 F.3d at 944 (quoting *In re Mercury Interactive Corp.*, 618 F.3d 988, 992 (9th Cir. 2010)).

[22] *In re Optical Disk Drive Prods. Antitrust Litig.*, 959 F.3d at 930; *Bluetooth*, 654 F.3d at 944.

year in the courtroom. But skipping this step breaches the district court's fiduciary duty to the class.[23]

The amicus brief in this case, by the Attorneys General of seven states—Arizona, Arkansas, Idaho, Indiana, Louisiana, Missouri, and Texas—urges that instead of merely encouraging a cross check, we ought generally to require it. Now-Justice Gorsuch has recommended reversing the trend toward percentage fees without cross checks,[24] and scholarly literature has developed urging the necessity of a lodestar cross check, including an article co-authored by experienced district judge Vaughn Walker.[25] In this case, the district court gave no reason—such as undue complexity or difficulty of calculation—for not using a lodestar cross check. The only justification the district court gave for not performing a lodestar cross

---

[23] *In re Optical Disk Drive Prods. Antitrust Litig.*, 959 F.3d at 930.

[24] Neil M. Gorsuch & Paul B. Matey, *Settlements in Securities Fraud Class Actions: Improving Investor Protection* 22–23 (Wash. Legal Found., Critical Legal Issues Working Paper No. 128, 2005).

[25] *See* Vaughn R. Walker & Ben Horwich, *The Ethical Imperative of a Lodestar Cross-Check: Judicial Misgivings About "Reasonable Percentage" Fees in Common Fund Cases*, 18 GEO. J.L. ETHICS 1453, 1454 (2005); Brian Wolfman & Alan B. Morrison, *Representing the Unrepresented in Class Actions Seeking Monetary Relief*, 71 N.Y.U. L. REV. 439, 503 (1996).

check was that it was not required. A lodestar calculated using class counsel's own submitted numbers—2,158 hours multiplied by hourly rates from $250 to $800 for attorneys and from $180 to $200 for paralegals—amounted to $1,428,047.50. That amount of money is not an insubstantial incentive to bring claims that settle before discovery, yet the district court awarded about ten times that much to class counsel.

In conclusion, the district court abused its discretion, and we ought to reverse, as we did in *Staton*, *Bluetooth*, and *Roes*. Even without a lodestar cross check, the attorneys' fee award violated Ninth Circuit law because it overvalued the amount gained for the class. Once the economic reality of the situation is considered, the percentage fee greatly exceeded even our 25% benchmark. Because so little litigation occurred before the settlement, and the percentage fee was so high, it was an abuse of discretion not to accept the "encourage[ment]"[26] in *Bluetooth* and *In re Optical Disk Drive Products Antitrust Litigation* to perform a lodestar cross check, even though cross checks are not absolutely required.

\* \* \*

---

[26] *In re Optical Disk Drive Prods. Antitrust Litig.*, 959 F.3d at 930; *Bluetooth*, 654 F.3d at 944.

16

Bank of America and class counsel did much better than the class in this case. Bank of America got much more than settlement of the claim made against them in this case. It bought, for $37.5 million in cash, a release and covenant not to sue for usury relating to overdraft fees by anyone anywhere (who did not opt out within the allowed time period) who had been charged an EOBC between February 25, 2014, and December 30, 2017. The settlement, once approved, barred the entire class from suit, even though the class was not certified when the agreement was made.

The reason why this had considerable value to the Bank was that other class action plaintiffs' attorneys were barred from bringing class actions for the putatively usurious fees. Creating a class as part of the settlement, where none was certified before, vastly expands the value of a release. In this case, "each Class Member who has not opted out . . . releases . . . [the bank] from any and all claims . . . against [the bank] with respect to the assessment of EOBCs as well as . . . any claim . . . which was or could have been brought relating to EOBCs . . . and . . . any claim that any other overdraft charge imposed by [the bank] during the Class

17

Period, including but not limited to EOBCs and initial overdraft fees, constitutes usurious interest." That broad release, extending to a nationwide class that had not previously been certified in order to bar such claims across the country, was indeed worth paying plaintiff's lawyers considerable money, but the case was not worth much to the class, just to the defendant and plaintiff's counsel.